**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | Case No. 06-CR-120-TCK |
| ) | |
| IVAN A. SILVA-ARZETA, ) | |
| a/k/a "Ivan Selva," ) | |
| a/k/a "Tony Arellano Cebrero, ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Before the Court is Defendant's Motion for Examination of Jurors For Evaluation of Rule 33 Motion for New Trial ("Motion for Juror Examination") (Doc. 92). Therein, Defendant requests that the Court "permit an examination of jurors from the first and second trials to determine whether the Government's exhibit of a package containing pink plastic baggies was augmented with additional and different pink baggies between the trials." (Mot. for Juror Examination 1.) Defendant's purpose in conducting such examination is to gather evidence in support of a motion for new trial pursuant to Federal Rule of Criminal Procedure 33. For the reasons explained below, the Motion for Juror Examination is denied.

**I.    Background**

Defendant was charged in a three-count Indictment with one count of Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(viii) ("Distribution Count"); one count of Possessing a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1); and one count of Possession of a Firearm by an Illegal Alien in violation of 18 U.S.C. § 922(g)(5). The methamphetamine forming the basis of the Distribution Count was found in a dresser drawer in an apartment where Defendant resided.

Defendant denied that the drugs found in the dresser were his and contended they belonged to his roommate. After a trial held in March of 2007 ("March trial"), the jury could not reach a unanimous verdict as to any count, and the Court declared a mistrial. After a second trial beginning in May of 2007 ("May trial"), the jury found Defendant guilty on all three counts.

### A. Exhibit 5 and Exhibit 2

In this post-verdict motion, Defendant requests to examine jurors from both trials regarding Government's Exhibit 5 ("Exhibit 5"). Exhibit 5 consists of a packet of pink and purple plastic baggies that were allegedly found in the same dresser drawer as the methamphetamine.[1] Defendant contends that Exhibit 5 changed from the March trial to the May trial. Specifically, Defendant contends that the packet containing the pink baggies contained a thin layer of baggies during the March trial, but contained a thick layer of baggies during the May trial. (Mot. for Juror Examination 5.) Further, Defendant contends that the "new" baggies matched in size a baggie contained in Government's Exhibit 2 ("Exhibit 2"). Exhibit 2 consists of an Eclipse gum box containing a pink baggie with a small amount of methamphetamine inside. Exhibit 2 was seized from the dashboard of Defendant's vehicle at the time of his arrest.[2] Defendant contends that "[l]iterally dozens of pink baggies in [Exhibit 5] now matched exactly in size the pink baggie taken from the Defendant's car [Exhibit 2]." (*Id.*) Thus, Defendant suspects that baggies were added to Exhibit 5 between trials for the purpose of creating a match with the pink baggie in Exhibit 2.

---

[1] The baggies comprising Exhibit 5 were in some type of container. Defendant described the container as a "packet" and a "large plastic bag" in his Motion for Juror Examination.

[2] Defendant was not charged with possession of these drugs but was only charged with the large amount of drugs found in the apartment.

2

B.    **Relevant Portions of March Trial**

1.    Government's Evidence and Argument

During the March trial, Officer William MacKenzie ("MacKenzie") testified regarding the significance of Exhibit 5:

> Q: What's No. 5?
> A: Number 5 is two packages of clear baggies. One is pink and one is purple.
> Q: Are you familiar with those baggies, those types of baggies?
> A: These baggies are commonly used to package controlled substances. Commonly with the size of these baggies, usually around a gram will be placed in these baggies and sold for approximately $100. *One of these baggies is a little smaller than the other one. The purple is smaller than the pink.* It's commonly used for a half gram. And the pink is probably used for a gram.
> . . .
> Q: Now, there's also Exhibit 2 laying up on the counter in front of you, the Eclipse gum box. Are you familiar with that?
> A: I remember this, yes.
> Q: You know that it was seized from the dashboard of the vehicle [Defendant] was driving. The plastic baggie that's in there, what color is that?
> A: It's pink.
> Q: Is there any significance in the different colors of baggies, a pink baggie, a purple baggie?
> A: It's consistent with the same pink baggies that were recovered inside the apartment.

(3/28/07 Tr. at 46) (emphasis added).[3] During closing argument, over the objection of Defendant, counsel for the Government compared the pink baggies in Exhibit 5 to the pink baggie in Exhibit 2:

> [MS. REINCKE:] Inside the apartment, they found a dresser, in two drawers of which was approximately 261.2 grams of methamphetamine; $2,600; a number of a little plastic baggies just like the one that Mr. Silva had in the Eclipse gum package.

---

[3] According to Defendant, the italicized testimony indicates there were only two sizes of baggies in Exhibit 5 the March trial – a pink baggie used for a gram and a smaller purple baggie used for half gram.

> MR. LUNN: Your Honor, I object to that in terms of the evidence.
> THE COURT: As I just indicated to the members of the jury, it's your recollection that controls in this regard as to the attorneys argument. You may proceed.

(3/30/07 Tr. 286.)

### 2. Defendant's Evidence and Argument

To counter MacKenzie's testimony during the March trial, Defendant testified that the pink baggies that were part of Exhibit 5 were larger than the pink baggie that was part of Exhibit 2. (3/28/07 Tr. at 252.) Defendant's counsel contends that, during closing argument, he "opened the large plastic bag containing Government's Exhibit 5" and then "took out the thin plastic bag containing the pink baggies, opened it, and showed the pink baggies to the jury." (Def.'s Mot. for Juror Examination 4.) Defendant's counsel argued:

> There's also the issue of the pink baggies. The pink baggie that's taken from the car [Exhibit 2] is smaller than the baggies that are taken from the -- that supposedly are found by the police [Exhibit 5].
> Now, if Mr. Silva had just simply gotten himself a scoop of drugs out of that drawer, he didn't get it from these pink baggies. These pink baggies are different than the ones that Mr. Silva had. So don't think the fact that Mr. Silva had a pink baggie with him when he was arrested, that that pink baggie has any relationship with the pink baggies that supposedly were found in the apartment.

(3/30/07 Tr. at 303-04.)

### C. **Relevant Portions of May Trial[4]**

#### 1. Objection Before Trial

Before commencement of the May trial, Defendant's counsel examined Exhibit 5. It was brought to the Court's attention that Defendant's counsel believed Exhibit 5 had been tampered with between trials, and the Court allowed Defendant to make a record. Defendant's counsel argued that

---

[4] There is no official transcript of the May trial. In addition to reviewing its notes, the Court listened to a real-time recording of the trial for purposes of this Order.

Exhibit 5 now contained, for the first time, numerous baggies that were the same size as that contained in Exhibit 2 and that he was "flabergasted." Defendant's counsel argued that the evidence in the March trial demonstrated no match between the two exhibits, as did the visual demonstration and argument during his closing.

Counsel for the Government informed the Court that she would stake her reputation and her bar license on the fact that Exhibit 5 had not been tampered with between the trials. She explained the chain of custody of the evidence to the best of her knowledge. She stated that her recollection was that MacKenzie testified that there was in fact a match between the baggies in Exhibit 5 and Exhibit 2. The only explanation she could provide for defense counsel's belief that Exhibit 5 had changed was that it could appear that the baggies in Exhibit 5 did not match the baggie in Exhibit 2 until they were removed from their container. The Court agreed with the Government's recollection of Exhibit 5 – that it did in fact contain baggies matching Exhibit 2 during the March trial– but took the matter under advisement until the Court could review its trial notes.[5]

    2.  <u>Objection Prior to Admission</u>

Prior to introduction of Exhibit 5 during the May trial, counsel for Defendant objected to its admission and conducted examination of MacKenzie regarding its chain of custody. MacKenzie testified that he had retrieved the exhibits from the Special Investigations Division office the night before trial and placed them in a locked box in his vehicle overnight. He did not know what happened to the evidence between the end of the March trial and before he retrieved it. After

---

[5] At this juncture, the Court made passing reference to a conversation between the Court and the March jurors following the trial. However, the Court did not consider, for purposes of ruling on Defendant's objection at trial or this motion, any aspect of this *ex parte* conversation. *See Peterson v. Wilson*, 141 F.3d 573, 577-78 (5th Cir. 1998) (holding that it was reversible error for district judge to rely on post-verdict questioning of jurors in ruling on motion for new trial).

considering this testimony, the Court's notes from the March trial, and the parties' arguments, the Court admitted Exhibit 5. The Court admitted Exhibit 5 because the Court did not find sufficient proof of evidence tampering to warrant its exclusion.

        3.      <u>Government's Evidence</u>

When MacKenzie testified about Exhibit 5 during the May trial, he testified that there were two sizes of pink baggies (large and small) in addition to the smaller purple baggies. This was slightly different than his testimony during the March trial, during which he mentioned only pink and purple baggies. However, unlike during the March trial, Government's counsel specifically asked MacKenzie to remove the pink baggies from their container. When he did so, MacKenzie testified there were two different sizes of pink baggies. He further testified that the smaller of the two sizes of pink baggies matched in size the pink baggie in Exhibit 2.

    **D.**    **<u>Defendants' Proposed Juror Examination</u>**

Defendant admits he does not currently have sufficient evidence to support a motion for new trial. He therefore requests that the Court or an independent examiner question jurors from the March trial to determine if they believe Exhibit 5 (as it was presented during the May trial) is the same as it was during the March trial. If the March jurors testified that Exhibit 5 appeared the same as it did during the March trial, Defendant then proposes to examine the May jurors to ensure there was not also evidence tampering following the May trial (presumably, to return the evidence to its pre-tampering state). Specifically, Defendant proposes the following:

> Defense counsel believes the only realistic way of resolving whether [Exhibit 5] containing the pink baggies was augmented with additional pink baggies is to ask jurors from the first trial whether [Exhibit 5] in the second trial appears to be the same, or different. If the first panel of jurors during their deliberations actually took out the pink baggies in response to defense counsel's argument and found that none matched the pink baggies found in Government's Exhibit 2 taken from the

> Defendant's car, then the jurors from the first panel could be quite emphatic that the pink baggies contained in [Exhibit 5] in the second trial do not match. If no close examination was made of the pink baggies by the first jury panel, however, then the jurors may not be able to resolve the issue.
> The place to start such an examination would likely be with Katherine Hine, the foreman of the first jury panel. Since the Government was allowed to leave with Exhibit 5 containing the pink baggies after the second trial, it might be wise to examine Tara McEwen, the foreman of the second jury panel, to insure that Exhibit 5 from the second trial has not had pink baggies taken out of it since the trial. If defense counsel's concern appears to have some validity, additional jurors from the first panel could then be examined.

(Def.'s Mot. for Juror Examination 8-9.) Defendant suggests that the examination should be conducted through a mutually agreeable attorney "[g]iven the highly inflammatory nature of the accusations." (*Id.* 9.)

## II.     Order for Additional Briefing

After reviewing the original briefs, the Court found several unaddressed issues. First, neither party set forth the standard governing a post-trial motion for an evidentiary hearing on a matter that could potentially form the basis of a Rule 33 motion for new trial. Defendant did not set forth any standard whatsoever. The Government addressed the Motion for Juror Examination as if it were itself a motion for new trial and set forth only the standard governing motions for new trials. (*See* Resp. to Mot. for Examination 5 ("Because Defendant has failed to show the existence of any evidence discovered after trial, as well as evidence supporting the other requirements of *Sinclair* [governing motions for new trial based on newly discovered evidence], his motion should be denied.").) The problem with the Government's original argument is that Defendant admits he does not have newly discovered evidence but instead seeks to gather such evidence. Second, neither party addressed the potential effect of Federal Rule of Evidence 606(b), which prohibits post-verdict questioning of jurors in certain circumstances. Finally, neither party set forth the specific standard

governing a potential motion for new trial based on evidence tampering, as opposed to the more general standard governing motions for new trials. *Compare United States v. Grismore*, 546 F.2d 844, 850 (10th Cir. 1976) (setting forth standard for motion for new trial based on evidence tampering) *with United States v. Sinclair*, 109 F.3d 1527, 1531 (10th Cir. 1997) (setting forth more general standard for new trial). The parties addressed these unresolved issues in additional briefing submitted to the Court on August 3, 2007 (Docs. 97-99), and August 9, 2007 (Doc. 100).

## III.     Preliminary Legal Conclusions

The Court will first address two legal issues that are potentially outcome determinative. Because the Court finds these legal issues do not preclude the proposed juror examination, the Court will then proceed to analyze the motion under the appropriate legal standard.

### A.     **Government's Argument Regarding "Newly Discovered Evidence"**

The Government argues that the Motion for Juror Examination should be denied because Defendant raised the issue of tampering before and during trial, thereby eliminating the possibility that any potential motion for new trial would be based on "newly discovered evidence." (Govt.'s Resp. in Opp. to Def.'s Mot. for Examination of Jurors 3 ("Since defendant made the allegations o[f] 'augmentation' of the evidence prior to trial, there is no newly discovered evidence.").[6]  In order to qualify as "newly discovered," evidence must be discovered after trial, and the failure to learn of the evidence must not caused by Defendant's own lack of diligence. *See United States v. Quintanilla*, 193 F.3d 1139, 1147 (10th Cir. 1999).

---

[6] Any potential motion for new trial filed in this case will be more than seven days following the verdict and therefore must be based on newly discovered evidence. *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999) ("After the seven-day period has expired, however, a defendant's new trial request may be granted only on the basis of newly discovered evidence.").

8

The basis for any potential motion for new trial would be that the Government or its agents deliberately tampered with Exhibit 5 between the two trials. The Court finds that, assuming the requested testimony of jurors actually substantiated Defendant's claim that evidence tampering occurred, this could qualify as "newly discovered evidence" despite the fact that Defendant voiced his suspicions regarding tampering before and during the May trial. Any other result would penalize Defendant's counsel for immediately voicing his suspicions to the Court. In this case, Defendant's counsel objected to admittance of Exhibit 5 and attempted to discredit the chain of custody but ultimately could not make a sufficient showing to exclude the evidence. In the instant motion, Defendant seeks to gather further evidence in support of his suspicion. The potential newly discovered "evidence" would be the juror testimony or other corroborative evidence supporting what is currently a mere suspicion of defense counsel. Thus, the Government's argument that the Motion for Juror Examination must be denied because Defendant's counsel raised the issue during trial is unpersuasive.

### B.     Effect of Federal Rule of Evidence 606(b)

The Court also finds it necessary to discuss whether Federal Rule of Evidence 606(b) prevents the requested juror examination. This evidentiary rule provides:

> (b) Inquiry into validity of verdict or indictment. *Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.* But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

Fed. R. Evid. 606(b) (emphasis added). Rule 606(b) protects "mental operations and emotional reactions of jurors in arriving at a given result" in order to avoid "plac[ing] every verdict at the mercy of jurors and invit[ing] tampering and harassment." Fed. R. Evid. 606(b), Adv. Comm. N.; *see also Tanner v. United States*, 483 U.S. 107, 121 (1987); *Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1548 (10th Cir. 1993) ("Rule 606(b) forbids a juror from testifying as to matters occurring during deliberations or the juror's mental processes."). In federal decisions interpreting Rule 606(b), the "central focus has been upon insulation of the manner in which the jury reached its verdict, and this protection extends to each of the components of deliberation, including arguments, statements, discussions, mental and emotions reactions, votes, and any other feature of the process." Fed. R. Evid. 606(b), Adv. Comm. N. Wright and Gold set forth the "three basic components" of witness disqualification contained in Rule 606(b):

> First, the principle applies only in a specific procedural context: "an inquiry into the validity of a verdict or indictment." Second, the provision lists the forms of evidence barred: testimony, affidavit, or "any statement." Third, the exclusionary principle applies only to evidence on certain specified subjects: (1) "any matter or statement occurring during the course of the jury's deliberations," (2) "the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment," or (3) "the juror's mental processes in connection therewith." Disqualification follows under these circumstances unless an exception applies.

27 Charles Alan Wright & Victor J. Gold, *Federal Practice and Procedure* § 6074.

### 1. March Jurors

Defendant contends, and the Government concedes, that Rule 606(b) does not prohibit questioning of the March jurors because they did not actually reach a verdict. (*See* Govt.'s Resp. to Court Order at 8 (arguing only that Rule 606(b) prevents examination of the "second jury").) This conclusion appears to be supported by the plain language of the rule, which extends only to inquiries in a specific procedural context – an inquiry into the validity of a "verdict." *See id.* Accordingly, primarily because the Government has conceded this point, the Court will not apply Rule 606(b) to prevent questioning of the March jurors.[7]

### 2. May Jurors

With respect to the May jurors, Defendant only requests to examine them depending on the outcome of the questioning of the March jurors. As explained below, the Court will not allow examination of the first jury, and there therefore is no reason to discuss application of Rule 606(b) to questioning of the second jury.[8]

## IV. Proper Legal Standard

In the additional briefing ordered by the Court, Defendant argues that the Court should apply the standard governing motions for juror examination pursuant to Rule 606(b). (*See* Def.'s Br. on

---

[7] Neither the parties nor the Court were able to identify authority specifically discussing whether juror examination was prohibited by Rule 606(b) in a case involving a hung jury. However, the Tenth Circuit has indicated that a jury must have actually reached a verdict in order for the rule to apply. *See United States v. Simpson*, 950 F.2d 1519, 1522 (10th Cir. 1991) (stating that Rule 606(b) does not apply if a trial court is inquiring about possible juror taint prior to a verdict).

[8] The Court observes, however, that it would be difficult to question the May jurors about their recollection of Exhibit 5 without necessarily asking them to disclose aspects of their mental processes. Although Defendant claims such questioning would go only to the appearance of Exhibit 5 and not to the subject of deliberations, a juror would likely have no specific memory of Exhibit 5 divorced from how Exhibit 5 was discussed and examined during the course of his deliberations.

Standard Governing Mot. for Juror Examination 1.) Rule 606(b) motions are generally made for the purpose of determining if the jury was exposed to "extraneous influences" that tainted its decision. *See United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir. 1988). The standard applied in these cases is fairly lenient and requires only that the Court be apprised of a fact indicating an extrinsic influence may have tainted the trial. *See Hornung*, 848 F.2d at 1045 ("When a trial court is apprised of the fact that an extrinsic influence may have tainted the trial, the proper remedy is a hearing to determine the circumstances . . . ."); *United States v. Davis*, 15 F.3d 1393, 1412 (7th Cir. 1994) ("Once the defendant has made a colorable showing of the possibility of taint, he may invoke Fed. Rule of Evid. 606(b), which permits a juror to testify . . . on the question of whether extraneous prejudicial information was improperly brought to the jury's attention . . . .").

The Court finds these cases to be inapposite because the issue upon which the March jurors would be questioned is not whether "an extrinsic influence may have tainted the trial"; the issue is whether the evidence was different from one trial to the next. The requested examination is not for the purpose of determining whether the jury was tainted by an outside influence, such as improper contact with an outside source, and the facts simply do not fit the line of cases cited by Defendant. *See, e.g., Hornung*, 848 F.2d at 1043-44 (noting that district court properly held hearing after juror submitted affidavit admitting that he learned incriminating information about defendant while conversing with his bank teller and told incriminating information to a fellow juror).

Instead, the Government has cited the proper standard to govern Defendant's request, which was recently set forth by the Tenth Circuit in *United States v. Velarde*, 485 F.3d 553 (10th Cir. 2007). In *Velarde*, Defendant had some evidence, although not substantiated, to support his belief that the Government had improperly suppressed potentially exculpatory material prior to trial. After

12

conviction, the defendant moved for a new trial based on the evidence he then had, but he also explained to the Court his desire to subpoena additional witnesses to obtain further admissible evidence that would support a motion for new trial. The district court did not allow this discovery and denied the motion for new trial. On appeal, the Tenth Circuit discussed the "intersection of evidentiary hearings and fact discovery in the Rule 33 context" and set forth standards governing when a district court must allow discovery into a potential basis for new trial. *Id.* at 559-60. The Court finds the procedural posture of this case similar to *Velarde* in that Defendant has suspicions of wrongdoing by the Government and is now requesting judicially supervised discovery in an attempt to gain sufficient evidence to support a motion for new trial. Although the requested discovery involves examining jurors, the Court finds the *Velarde* standard to be most applicable.

**V.     *Velarde* Standard and Application to this Case**

Prior to *Velarde*, Tenth Circuit case law discussing when and under what circumstances a district court must allow a defendant in a criminal case to conduct discovery regarding a potential basis for new trial under Federal Rule of Criminal Procedure 33 were "obscure and apparently not well understood." *See Velarde*, 485 F.3d at 559. Fortunately, the Tenth Circuit recently clarified this issue and set forth specific standards governing a court's obligations to allow discovery into potential bases for new trials by criminal defendants. *See id.* at 559-60.

From *Velarde*, several relevant principles can be gleaned. First, the proper procedural mechanism for a defendant who needs Court assistance in gathering evidence in support of a motion for new trial, such as judicial compulsion or subpoena power, is "to request leave to conduct discovery." *See id.* at 560.[9] Second, when such a request is made, a defendant must show that

---

[9] The Court construes Defendant's Motion for Juror Examination as such a request.

13

"further investigation under the court's subpoena power *very likely would lead* to the discovery of [evidence sufficient to support a motion for new trial or, at least, a motion for evidentiary hearing on a new trial]." *See id.* (emphasis added). A defendant must make "specific allegations" that "show reason to believe that [the defendant] may, if the facts are fully developed, be able to demonstrate that he is entitled to a motion for new trial.'" *Id.* (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)). In addition, there must be "a firm evidentiary basis for believing such evidence likely exists," and discovery is not to be allowed if it is a "mere fishing expedition based on the defendant's mere hopes of finding exculpatory evidence." *Velarde*, 485 F.3d at 561. Therefore, the standard governing these motions for discovery is a high one, and discovery is to be granted only in a "rare class of cases." *See id.*

Defendant offers the following in support of his request for discovery on the issue of evidence tampering: (1) Defendant's counsel's belief that the evidence changed from trial to trial; and (2) Officer MacKenzie's "changed" testimony regarding Exhibit 5 between the two trials. The Court finds this evidence to be insufficient to meet the *Velarde* standard. First, defense counsel's belief is not a "specific allegation" that gives this Court "reason to believe that [the defendant] may, if the facts are fully developed, be able to demonstrate that he is entitled to a motion for new trial." *See id.* at 560 (quotation omitted).

Second, the Court has carefully considered MacKenzie's testimony in both trials. There is a slight difference in the testimony. During the first trial, MacKenzie mentioned only pink and purple baggies. In the second trial, he mentioned purple baggies and two sizes of pink baggies. However, during the second trial, counsel for the Government asked MacKenzie to take the baggies out of their the container. It was then that he identified two sizes of pink baggies. The Court finds

14

the May testimony to be more specific but not necessarily inconsistent. More importantly, the Court does not find the difference in testimony in any way indicative of evidence tampering. Instead, the Court finds any slight difference attributable to the different way the evidence was presented to the officer and the different line of questioning by the Government during each trial. Also instructive is that during both trials, MacKenzie ultimately concluded there was a match with the Exhibit 2 baggie.

Further, the Government's use and characterization of Exhibit 5 did not change from trial to trial. Defendant's argument may have more force if the Government had avoided this line of questioning during the first trial and then utilized it during the second trial. However, the Government elicited testimony and argued in both trials that there was a match. It perhaps did a better job of doing so during the May trial, but that it not indicative of evidence tampering. Further, the fact that Defendant presented a different interpretation of Exhibit 5 than the Government during the March trial also does not indicate that tampering must have occurred. As in most trials, the parties had different views and presented competing characterizations of the evidence to the jury.

Finally, this case is factually distinguishable from the *Velarde* case itself, in which the Court reversed the trial court's decision not to allow further discovery or an evidentiary hearing. *Velarde* involved conviction of sexual abuse of a minor. After trial, the defendant was told by a teacher at the victim's school that the victim had previously falsely accused a teacher and principal of inappropriate touching. The defendant was also told that the government was aware of this prior to trial. The defendant moved for new trial, presenting an affidavit of the teacher who knew of the accusations against the principal and another teacher. The government denied the allegations. At what the district court carefully classified as a legal hearing (and not an evidentiary hearing), the

defendant explained the need for subpoena power and compelled judicial process in order to gather evidence from the accused teacher and principal because "an allegation of sexual touching is sort of a death knell to a career for a teacher." *See id.* at 557 (quoting hearing transcript). The district court denied the motion for new trial on grounds that the affidavit from the other teacher did not contain reliable or admissible evidence regarding the accusations. Under these circumstances, the Tenth Circuit found it was a "rare case" in which the evidence proffered (the affidavit) made it "more likely than not" that the victim in fact made the allegations and that the school investigated the allegations and found them false. *See id.* at 561. Therefore, the Tenth Circuit remanded for the district court to allow further discovery into the accusations.

This case is clearly distinguishable in that there is no affidavit or other evidence indicating that the March jurors would, more likely than not, confirm Defendant's suspicion of evidence tampering. To the contrary, there is a logical explanation for Defendant's belief that Exhibit 5 looked different from trial to trial – it was a confusing exhibit containing numerous sizes and colors of baggies. It was so confusing that the parties argued opposite conclusions to be drawn from Exhibit 5 during the March trial.[10] In addition, Exhibit 5 was perhaps not used as effectively as possible by the Government during the first trial. Specifically, MacKenzie was not asked to take the baggies out of their container. Unlike the defendant in *Velarde*, Defendant has presented no facts, circumstances, or evidence indicating to the Court that questioning the March jurors "very likely would lead" to evidence that Exhibit 5 was tampered with between the two trials. *See id.*

---

[10] Defense counsel's argument that Exhibit 5 got "thicker" from trial to trial also does not cause the Court significant concern. Even assuming this argument were in the form of admissible evidence such as an affidavit and that the allegation was true, an increase in size was likely caused by the baggies being removed and then re-stuffed back into their container by the March jury or the Government.

Defendant has failed to provide the Court with a "firm evidentiary basis" for believing the March jurors would testify that the evidence was in fact tampered with. *See id.* Instead, in the Court's view, the examination would be more like a "fishing expedition" that is unlikely to lead to any exculpatory information.

Defendant's Motion for Juror Examination (Doc. 92) is DENIED.[11]

IT IS SO ORDERED this 16th day of August, 2007.

*Terence Kern*

TERENCE KERN
UNITED STATES DISTRICT JUDGE

---

[11] The Court does not reach the question of whether, assuming juror testimony did in fact indicate that the Government tampered with Exhibit 5, this would be sufficient to support a motion for new trial under *United States v. Grismore*, 546 F.2d 844, 850 (10th Cir. 1976), which requires a new trial if the allegedly tampered evidence was "material" and "could in any reasonable likelihood have led to a different result on retrial."

17